**WOMENS SERVICES, P.C., et al., Plaintiffs,**

v.

**Paul L. DOUGLAS, et al., Defendants.**

**Dr. Raymond SCHULTE, Plaintiff,**

v.

**Paul L. DOUGLAS, et al., Defendants.**

**Dr. Marvin L. DIETRICH, Plaintiff,**

v.

**Paul L. DOUGLAS, et al., Defendants.**

**Nos. CV80-0-349, CV81-0-162 and CV81-0-197.**

United States District Court, D. Nebraska.

Oct. 4, 1982.

See also D.C., 567 F.Supp. 522.

## MEMORANDUM RE ATTORNEYS' FEES AND EXPENSES

URBOM, Chief Judge.

Much too much time has gone by since the decision was made on the merits and the award of attorneys' fees and expenses was reserved. I accept responsibility for the delay and regret that it has occurred.

I think I need not articulate at length the legal considerations that are available in cases such as these. I have set them out in fair detail in *Womens Services v. Thone,* CV78–L–289 and CV79–L–85, and *Ladies Center, Nebraska v. Thone,* CV79–L–100, involving most of the same counsel.

### PLAINTIFF SCHULTE

Lawrence I. Batt's supporting affidavit of August 14, 1981, shows a normal and usual hourly rate of $75.00 "for work of any nature" (paragraph 8 of filing 36), but also says:

"It is my position that a determination ... should be based upon my normal and usual hourly rates of $100.00 per hour for in-court time and $75.00 for out-of-court time...." (paragraph 11 of filing 36)

He urges an enhancement of the fee because of the contingent nature of the fee and the controversial nature of the abortion issue.

Mr. Batt's affidavit shows he spent 82.2 hours, including time regarding a temporary restraining order hearing in *Dietrich v. Douglas;* Richard Calkins, 2.7 hours; and a law clerk, 73.3 hours. Mr. Calkins is described only as "employed by me" and "an associate employed by me." Mr. Batt asks for $60.00 an hour for Mr. Calkin's time, but I know too little about him to fix a rate above $35.00 an hour. Mr. Calkins spent .3 hour in "Conference with Law Clerk re Federal rules of Civil Procedure" on March 26, 1981 (the complaint was filed that day); .4 hour to "Review brief" on May 12, 1981; and 1.2 hours in "Telephone conference with press; review ruling; telephone conference with Mr. Batt re ruling" on July

30, 1981. I shall allow for Mr. Calkins only 1.5 hours of the 2.7 hours itemized.

The law clerk spent 73.3 hours, but some of it must be eliminated or discounted. Mr. Batt's affidavit shows that on March 23, 1981, the law clerk spent four hours in "Trip to Lincoln to Dr. Schulte's office to file amended complaint." I am not able to reconcile the elements of that statement, because no amended complaint was ever filed, no filing of anything was made on that date—indeed, the *Schulte* action had not yet been filed and Dr. Schulte's office, as far as I can tell, was not in Lincoln. Mr. Batt's letter to me of September 1, 1981, explains that everything prior to the filing of the *Schulte* action—which was on March 30, 1981—related to a consideration of filing an amended complaint in *Womens Services v. Douglas.* That explanation, however, does not answer the questions regarding the March 23, 1981, entry. Mr. Batt's September 1, 1981, letter acknowledges that the law clerk's work on a reply brief was duplicative and that the hours or hourly rate may be reduced to take into account the law clerk's relative inexperience and the ultimate work product delivered to the court. On examination of the time itemization, I shall allow 45 hours at $20.00 an hour for the law clerk's time.

Mr. Batt, who has practiced law since 1971 and has been directly involved in abortion cases since 1973, including six filed since 1978, has itemized 82.2 hours. The defendants' counsel quarrels with it as being "outrageous" and without analyzing the itemization in detail says that it is "apparent that the majority of this time was spent on the phone discussing the case with anyone who might listen." Brief of Defendants in Opposition to Attorney Fee Applications, page 8.

Mr. Batt's itemization includes at least forty telephone calls. About half of these were with Mr. Susman or Mr. Levy, who represented Dr. Dietrich in the companion case. Some duplication is involved in this and a discounting therefore needs to be done as to them. The remaining itemization appears to be reasonable.

The adding machine comes up with 64.2 hours for Mr. Batt's time, as itemized on Exhibit A attached to his affidavit, filing 36. Of that, 4.5 hours were in-court time. Additionally, 18 hours for the Jane Doe time on April 29 and 30, 1981 (shown in the affidavit but not in Exhibit A), are properly counted, but must be allowed at the out-of-court rate. That makes a total for Mr. Batt of 77.7 hours out-of-court time and 4.5 hours in-court time. A discount of seven hours will be made for duplication in the out-of-court time, leaving 70.7 hours.

Mr. Batt's fee arrangement with Dr. Schulte was entirely contingent upon success. The risk of receiving no fee was, therefore, upon Mr. Batt, and that factor calls for an increased fee. The issues were reasonably complex, although almost entirely matters of law and were resolved by summary judgment. The quality of the work was good.

In a similar previous case, I allowed counsel—including Lawrence I. Batt—$70.00 an hour for in-court time and $55.00 an hour for out-of-court time. The rate here will be $80.00 an hour for in-court time and $65.00 for out-of-court time. Mr. Batt should have added to that for the foregoing services a 30 per cent factor for the risk arising from the contingent nature of the fee. I am not persuaded that the controversial nature of the case calls for an enlargement of the fee. It does mean that vigorous opposition by adverse counsel was to be expected and was experienced. On April 20, 1979, in a ruling on a motion for preliminary injunction in *Ladies Center, Nebraska v. Thone,* CV79–L–100, I had ruled that the sections of the statute here challenged were constitutional, so counsel for the plaintiffs in the present cases could not look to success without careful and considerable advocacy.

For Mr. Batt's time I award $4,595.50 for out-of-court time, $360.00 for in-court time, and add to that a 30 per cent factor, which makes a total award in fee attributable to his efforts of $6,442.15. Adding $52.50 for Richard Calkins' services and $900.00 for the law clerk's time makes a fee allowance of $7,394.65 to the plaintiff Schulte.

As for expenses, I use the same criteria as I used in *Ladies Center, Nebraska v. Thone,* CV79–L–100, affirmed at 645 F.2d 645 (C.A. 8th Cir.1981), and *Womens Services, P.C. v. Thone,* CV78–L–299 and CV79–L–85, affirmed at 645 F.2d 649 (C.A. 8th Cir.1981). Expenses reasonably incurred were for filing the complaint, service of process, deposition of Dr. Schulte, and transcript of the proceedings of June 24, 1981, totaling $186.89. The remaining expense matters are not to be allowed, in the absence of more detailed justification.

## PLAINTIFF DIETRICH

Michael T. Levy counts abortion litigation as one of the areas of his specialization; he itemizes by affidavit 37.7 hours of out-of-court time and 6.7 hours of in-court time, and asks for rates of $75.00 an hour for the former and $100.00 an hour for the latter. Observations made earlier in this memorandum about the nature of the case are applicable to the Dietrich case as well. The fee arrangement of Mr. Levy with Dr. Dietrich was contingent.

The defendants' disagreement with Mr. Levy's itemization is generalized: "The primary complaint we have with the affidavit of Mr. Levy is that with the exception of his involvement with the application for a temporary injunction by Plaintiff intervenor Jane Roe, he primarily served as local counsel for Mr. Susman. [The remaining time] was predominately made up of telephone calls to other counsel or the reviewing of pleadings and briefs prepared by the parties." Brief of Defendants in Opposition to Attorney Fee Applications, page 3.

Some duplication does exist, especially where the two counsel for the same plaintiff are talking with each other or reviewing each other's work and where both appeared in court. Otherwise, I find Mr. Levy's itemization in order. I allow 18 hours for out-of-court time, less 6 hours for duplication, as to time spent other than regarding Jane Doe; 4.5 hours for in-court time, less 1.5 hours for duplication, as to time spent other than regarding Jane Doe; 19.7 hours for out-of-court time spent regarding Jane Doe; and 2.2 hours for in-court time regarding Jane Doe. The rates of $65.00 an hour for out-of-court time and $80.00 an hour for in-court time are appropriate, but Mr. Levy also is entitled to a 30 per cent addition for the risk from the contingent nature of the fee. Computation results in a fee of $3,219.45.

Expenses reasonably incurred are for filing the complaint, service of summons, and, because of the explanation that it was for pleadings and briefs filed, photocopies. The total is $93.24.

Frank Susman, expert in the field of abortion law, has practiced in that realm since 1969. His itemization does not separate in-court from out-of-court time in any clear way, but it appears that 6.5 hours may be classified as in-court time. I find the itemized time somewhat excessive—for example, spending 1.4 hours in reviewing a letter and pleadings in the *Schulte* case, which pleadings at that stage consisted only of a short complaint, and spending 2.1 hours in "Research and preparation of motion to strike Sigler affidavit" and 3.2 hours on "Research and drafting of supplemental brief filed by defendants"—and there must be some discounting for duplication, because of two counsel representing the plaintiff Dietrich. I conclude that 43.2 hours of out-of-court time were reasonably consumed, and I shall discount 4 hours for duplication.

What Mr. Susman's usual fee is has not been shown, and whether the fee arrangement was on a contingent basis is not expressed. Mr. Susman's affidavit states only that on December 3, 1980, Chief Judge Charles M. Allen awarded him $125.00 an hour for in-court and $100.00 for out-of court time. That is not of much help, because I know nothing of the nature or circumstances of the case, other than it was an abortion case. With the sparse showing before me, I shall use the same base figures as for Mr. Levy and Mr. Batt, but I can make no increase for the risk factor based upon the contingent fee arrangement.

Thus figured, the award relating to Mr. Susman's time is $3,068.00. His expenses

were for air fares from St. Louis, long distance calls, hotels, meals and miscellaneous expenses. Mr. Susman's letter of September 3, 1981, says that the Eighth Circuit Court of Appeals has resolved the question of such expenses by affirming an award of similar items in *Planned Parenthood Association of Kansas City, Missouri, Inc. v. Ashcroft.* I am not able to find any reference to such expenses in the only reported appellate opinion that I have been able to locate —664 F.2d 687 (1981)—or in the reported district court opinion at 483 F.Supp. 679 (U.S.D.C.W.D.Mo.1980). The Eighth Circuit Court of Appeals affirmed my refusal to allow such expenses in *Womens Services v. Thone* and *Ladies Center, Nebraska v. Thone,* supra, and I see no reason to treat the expenses in this case differently. In keeping with my previous holdings, I shall not allow them.

## PLAINTIFFS WOMENS SERVICES AND ORR

The affidavit of Lawrence I. Batt itemizes his own time and that of his law clerk. I shall use the same hourly rates as earlier expressed in this memorandum, but, because there is no indication of a contingent fee arrangement, no enhancement will be made on the basis of that factor. Mr. Batt worked with another law firm, Lucas & Miller, P.C., of Washington, D.C., in representing these plaintiffs. Quite a bit of his time is overlapping theirs and a discounting will be made of his time because of it. The itemization is essentially in order and in good detail. Reasonable in-court hours were 2.5, less one hour for duplication, allowable at $80.00 an hour; 50.5 hours, less five for duplication, are allowable for out-of-court hours at $65.00 an hour. Reasonable expenses were for filing the complaint and service of process in the amount of $66.00. The rest is unexplained.

Lucas & Miller, P.C., terminated their relationship with the plaintiffs at some time. The affidavit of Mr. Batt shows the firm prepared the original complaint and several briefs, contacted numerous physicians, and obtained affidavits from a number of them. Mr. Lucas appears to be knowledgeable and experienced in abortion litigation. Why no affidavit was submitted from any member of that firm to explain what the firm did or who the persons are who performed the work is not known by me. The plaintiffs have paid Lucas & Miller, P.C., $19,236.30 for fee and expenses.

I have insufficient basis for awarding a fee for Lucas & Miller, P.C.'s services at any rate higher than anyone else's in the case, and as to some of the claimed hours, I have no basis for allowing any fee. The bill that formed the basis for payment by the plaintiffs lists "RL," whom I take to be Roy Lucas, "LM," whom I take to be Lynn Miller, and "GG," "KM," "JB," and "CI," of whose identities I have no clue, except as they might be supposed to be associates or law clerks. But award of fees against a defendant requires more than speculation, so I shall not allow for those unknown persons' hours.

The bill shows 11.75 hours in preparing the complaint. That appears excessive. It shows a trip to the airport by LM to send the complaint to Omaha; that surely could have been done by a clerk or, in any event, should be compensated at the pay scale of a clerk. It shows telephone conferences with co-counsel, which must be discounted. Accordingly, I award Lucas & Miller, P.C., as follows: 2.5 in-court time, less one hour for duplication, at $80.00; 209.85 out-of-court hours, less 21 hours for duplication, at $65.00. Computed that way, the fee attributable to the services of Lucas & Miller, P.C., is $12,395.25. Allowable expenses reasonably incurred are for travel expenses regarding witnesses and hearing transcript in the amount of $435.12.

Judgment will be entered accordingly.